Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Angela Reynolds*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Angela Reynolds,<br><br>  Plaintiff,<br><br>  v.<br><br>UNUM Life Insurance Company of America;<br>American Family Insurance Company;<br>American Family Insurance Company<br>Employee Disability Plan,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Angela Reynolds (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Plaintiff's employer American Family Insurance Company (hereinafter referred to as the "Company"), purchased a group disability insurance policy which was fully insured by UNUM Life Insurance Company of America (hereinafter referred to as "UNUM"). The specific UNUM policy is known as group policy number 526152.

4. The Company's purpose in subscribing to the UNUM policy was to provide disability insurance for its employees. Upon information and belief, the UNUM policy may have been included in and part of the American Family Mutual Insurance Company Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, UNUM functioned as the plan and/or claims administrator of the Plan; however, pursuant to the relevant ERISA regulation, the Company or Plan may not have made a proper delegation or properly vested fiduciary authority or power for plan and/or claim administration in UNUM.

6. Upon information and belief, Plaintiff believes UNUM operated under a financial conflict of interest in her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* UNUM's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.[1]

7. The Company, Plan and UNUM conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

8. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

9. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

10. After working for the Company as a loyal employee for over two and half years (2 ½), Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a Casualty Claim Desk Adjuster on or about August 28, 2007. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

11. Following her disability, Plaintiff applied for short term disability benefits, which were awarded to her through November 25, 2007, the maximum duration allowed under the relevant UMUM policy.

12. Plaintiff thereafter applied for long term disability benefits under the relevant UNUM policy.

13. The relevant long term disability plan provides the following definition of a covered disability and applies to Plaintiff's claim:

> You are disabled when UNUM determines that:
> - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

14. In support of her claim for long term disability benefits Plaintiff submitted to UNUM medical records from her treating physicians supporting her total disability and the fact she met the definition of disability set forth by the relevant UNUM policy.

15. UNUM notified Plaintiff that it had found she met the definition of disability and approved her claim for long term disability benefits.

16. In a letter dated November 30, 2009 UNUM informed Plaintiff she had received 24 months of benefits pursuant to the policy's "own occupation" definition of disability but that it determined she not meet the policy's "any occupation" definition of disability and therefore it terminated her benefits beyond November 25, 2009.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed UNUM's November 30, 2009 denial of her claim for long term disability benefits in a letter dated April 29,

-4-

2010. In support of her appeal, Plaintiff submitted additional medical information and supporting affidavits to UNUM demonstrating she was unable to work in any occupation as defined in the relevant UNUM policy.

18. In support of her appeal, Plaintiff submitted to UNUM a Functional Capacity Evaluation report dated January 14, 2010 which, based on a reasonable degree of medical certainty, the medical professional concluded after examination and testing that Plaintiff "would be unable to perform *__sedentary__* work consistently nor on any regular full – time basis" (emphasis added). Plaintiff also submitted a March 3, 2010 narrative letter from one of her treating physicians which concluded, based on objective medical findings, "[Plaintiff] has chronic low back thoracic and cervical pain, which precludes her from any gainful employment at this time." This physician also agreed with the findings of the Functional Capacity Evaluation stating, "I am in agreement with his statement that I do not believe she is able to perform even sedentary work on a consistent or intermittent basis or full time basis."

19. In further support of her appeal, Plaintiff submitted to UNUM a June 24, 2010 narrative letter from another treating physician who confirmed, "I believe it is reasonable to assume that she will be unable to sustain any gainful employment indefinitely." Plaintiff also submitted a May 24, 2010 Vocational Evaluation report, wherein an expert after interviewing Plaintiff and reviewing relevant records concluded she "is completely and totally disabled from the work force and fully meets the definition of disability as set forth in the UNUM Policy..."

20. In further support of her appeal, Plaintiff submitted to UNUM three (3) lay witness affidavits from her husband, long time friend and parents who all agreed she is incapable of any type of employment.

21. As part of its review of Plaintiff's claim for long term disability benefits, UNUM retained Neil McPhee, M.D. to conduct a medical records only review of Plaintiff's claim.

22. Upon information and belief, Plaintiff believes Dr. McPhee may have an incentive to protect his own consulting relationship(s) with the disability insurance industry and/or UNUM by providing medical review reports which selectively review and ignore evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as UNUM and which supported the denial of Plaintiff's claim.  Given the complexity of Plaintiff's disabling medical condition(s), Plaintiff believes Dr. McPhee's review of her claim presents a conflict of interest in that it did not have Dr. McPhee personally examine her and is a reason her claim was denied and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

23. In a letter dated July 6, 2010 Dr. McPhee contacted one (1) of Plaintiff's treating physicians and requested he address whether he agreed with his conclusion that Plaintiff was capable of returning to gainful employment.

24. In response to Dr. McPhee's inquiry, Plaintiff's treating physicians informed UNUM in a response letter dated July 20, 2010 he disagreed with Dr. McPhee's conclusions by stating, "I do not believe she will be able to return to work in any form…"

25. As an additional part of its review of Plaintiff's claim for long term disability benefits, UNUM obtained a vocational specialist to conduct an assessment of Plaintiff's claim who concluded Plaintiff is able to perform sedentary occupations in his/her November 23, 2009 report.

26. Notwithstanding Plaintiff's reliable evidence, in a letter dated September 15, 2010, UNUM notified Plaintiff it was denying her claim for long term disability benefits after erroneously concluding Plaintiff had failed to provide sufficient evidence to support

1   the severity of her serious medical conditions.  UNUM's denial letter confirms it failed to
2   provide a full and fair review pursuant to ERISA because it completely failed to reference,
3   consider and/or selectively reviewed most if not all of Plaintiff's evidence submitted.

4        27.   UNUM's determination was erroneous and unlawful because Plaintiff's
5   medical condition had deteriorated from the time it originally evaluated and approved her
6   claim for short and long term disability benefits and the medical evidence demonstrated
7   Plaintiff continued to meet any definition of disability in the policy.  In denying Plaintiff's
8   claim, UNUM also failed to fulfill its fiduciary duty to Plaintiff by erroneously and
9   unlawfully de-emphasizing her evidence, including the opinions of her treating physicians
10  who confirmed Plaintiff's medical condition(s) had not improved.  UNUM's review also
11  violated ERISA's requirement Plaintiff be provided with a full and fair review as required
12  by 29 C.F.R § 2560.503-1, because her claim was based on numerous medical conditions
13  and in determining whether Plaintiff met the definition of disability, UNUM did not
14  consider the combined effect or impact of Plaintiff's medical conditions and/or medications
15  with regard to whether she met the definition of disability in the relevant policy.

16       28.   The evidence submitted by Plaintiff to UNUM is sufficient for this Court to
17  find that she met the "any occupation" definition of disability in the relevant UNUM
18  policy.

19       29.   UNUM has been criticized by federal courts for the manner in which it
20  selectively reviews claims and terminates them when it is in the company's best interest.
21  The $26,394,765.39 dollar verdict and this Court's findings of fact as rendered in *Merrick v.*
22  *Paul Revere Life Ins*., 594 F. Supp. 2d 1168 (D. Nev. 2008) *(*Attached hereto as Exhibit "A"

is a copy of the *Merrick* decision), provides ample evidence of UNUM's conflicts of interest and the self-serving manner in which it manages, evaluates and denies disability claims. [2]

30.     UNUM has notified Plaintiff she has exhausted her administrative appeals.

31.     Plaintiff believes a reason UNUM terminated her claim for long term disability benefits is due to its aforementioned structural financial conflict of interest in that it was the sole decision maker with regard to whether Plaintiff was disabled pursuant to the policy and the payor of benefits if it approved Plaintiff's claim.

32.     In evaluating Plaintiff's claim on appeal, UNUM had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [3]

33.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of UNUM and any individual, including but limited to Dr. McPhee, who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced UNUM's decision to deny her claim.

34.     With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by UNUM as referenced herein are flagrant.

---

[2] Paul Revere Life Insurance Company is a subsidiary of UnumProvident Corporation.

[3] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

35. As a direct result of UNUM's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

36. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

37. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits as a result of being found disabled pursuant to the relevant policy's "any occupation" definition of disability from the date she was first denied these benefits through the date of judgment and prejudgment interest on those benefits as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the Plan or policy conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

1          DATED this 4th day of November, 2010.

2                    SCOTT E. DAVIS. P.C.

3

4              By:   */s/ Scott E. Davis*
                          Scott E. Davis
                          Attorney for Plaintiff

-10-